

**FILED**

Apr 29 2016, 8:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jay Meisenhelder
Jay Meisenhelder Employment & Civil
Rights Legal Services, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Andrea E. Rahman
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

P & P Home Services, LLC,

*Appellant-Petitioner,*

v.

Review Board of the Indiana
Department of Workforce
Development and Cynthia
Hutcherson,

*Appellee-Respondent*

April 29, 2016

Court of Appeals Case No.
93A02-1511-EX-1818

Appeal from the Review Board of
the Department of Workforce
Development

Cause No.
15-RB-1599

**Bailey, Judge.**

## Case Summary

[1]     P & P Home Services, LLC ("P & P") appeals a decision of the Review Board

of the Indiana Department of Workforce Development ("Review Board")

finding P & P's former employee, C.H., to be eligible for unemployment compensation benefits. P & P presents the sole issue of whether the Board's decision is contrary to law. We reverse and remand to the Review Board for further proceedings.

# Facts and Procedural History

[2] P & P is a provider of in-home personal care or health services for individual clients P & P refers to as "consumers." (Ex. Pg 13.) On November 25, 2013, C.H. began her full-time employment with P & P. She was assigned to work with one particular consumer ("Consumer"). The last day that she provided services for Consumer was December 31, 2014.

[3] On January 8, 2015, P & P notified C.H. that Consumer had terminated the business relationship between Consumer and P & P. On January 21, 2015, C.H. sent an e-mail message to the CEO of P & P, Ranaye Miles ("Miles"), inquiring about the availability of "second shifts" and their locations. (Ex. Pg 31.) Miles responded, in general terms, that second shift consumers were available "all over Indy." (Ex. Pg 32.) At the same time, Miles advised C.H. that she needed medication administration training.[1] On the same date, a letter was sent by P & P to C.H., requesting that C.H. submit her annual T.B. test

---

[1] P & P offered payment for the course, but did not pay wages for the time in attendance.

result ("expired 11/25/14") and her vehicle registration ("due before expiration"). (Ex. Pg. 36.)

[4] The requested materials were not submitted. No new consumer was assigned to C.H. Communications regarding potential assignments ceased, and P & P marked C.H.'s employment file with a date of separation from employment of February 15, 2015.

[5] C.H. sought unemployment benefits and, on July 8, 2015, a claims deputy found that C.H. was eligible for benefits because there was a lack of evidence to support a determination that C.H. had voluntarily quit her employment. On July 10, 2015, P & P appealed. An Administrative Law Judge ("the ALJ") conducted an evidentiary hearing on August 24, 2015.[2] At the conclusion of the hearing, the ALJ reversed the decision of the claims deputy, finding that C.H. had voluntarily quit her employment without good cause. C.H. appealed to the Review Board.

[6] On October 7, 2015, the Review Board issued an order reversing the ALJ decision. The Review Board concluded that the relationship between P & P and C.H. was essentially that of a temporary services agency and temporary employee; C.H.'s employment relationship with P & P had ended on January 8, 2015; and C.H. did not leave her employment voluntarily. This appeal ensued.

---

[2] The hearing was conducted telephonically, despite the absence of a telephone number for C.H., who did not participate.

# Discussion and Decision

[7] Decisions made by the Review Board are subject to review for legal error, but questions of fact determined by the Review Board are, absent limited exceptions, conclusive and binding. *K.S. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 33 N.E.3d 1195, 1197 (Ind. Ct. App. 2015). The Review Board's conclusions of law may be challenged as to "the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of facts." Ind. Code § 22-4-17-12(f). The Review Board's findings are classified in three ways: (1) as basic, underlying facts; (2) as "ultimate facts" derived as inferences or conclusions from basic, underlying facts; and (3) as conclusions of law. *Chrysler Group, LLC. v. Review Bd.*, 960 N.E.2d 118, 122 (Ind. 2012). We review the findings of basic facts under a "substantial evidence" standard and review ultimate facts to ensure that the Board has drawn a reasonable inference in light of its findings on the basic, underlying facts. *Id.*

[8] A claimant's entitlement to unemployment benefits is determined based upon the information that is available without regard to a burden of proof. I.C. § 22-4-1-2(c). The purpose of the Unemployment Compensation Act is to provide unemployment benefits to individuals who are "out of work through no fault of their own." *Giovanoni v. Review Bd. of Ind. Dep't of Workforce Dev.*, 927 N.E.2d 906, 909 (Ind. 2010). Therefore, an individual who voluntarily leaves his or her employment without good cause in connection with the work is disqualified from receiving unemployment compensation benefits. *K.S.*, citing I.C. § 22-4-15-1(a). Whether an employee has voluntarily left employment without good

cause in connection with the work presents a question of fact for the Review Board. *Davis v. Review Bd. of Ind. Dep't of Workforce Dev.*, 900 N.E.2d 488, 492 (Ind. Ct. App. 2009).

[9] Here, the Review Board found that C.H.'s employment with P & P ended involuntarily when P & P notified C.H., on January 8, 2015, that Consumer was no longer using the services of P & P. Without question, C.H. did not initiate an end to her employment with P & P on that date. However, the Review Board's premise that the employment relationship necessarily ended on that date is based upon treating P & P as if it were a temporary services agency.

[10] The Review Board cited *Cintemp, Inc. v. Unemployment Insurance Review Board*, 717 N.E.2d 988 (Ind. Ct. App. 1999) for the proposition that "once a temporary assignment ends, there is no relationship between the temporary employee and the temporary service agency except for consideration for future assignments." (App. at 56.) *Cintemp* involved a consolidated appeal by CTI, a temporary services company, of fifteen orders from the Review Board finding that a claimant was eligible for unemployment compensation after he or she had been temporarily placed in factory employment for sixty to ninety days, accepted an offer of full-time permanent employment there, but was subsequently laid off. *Id.* at 989-90. In affirming the orders, a panel of this Court observed:

> A thorough review of the record reveals that substantial evidence of probative value exists which supports the ALJs' findings of fact and conclusions as set forth above. The evidence shows that once an offer of permanent employment was extended to the Claimants by either Cambridge Industries or Libbey-Owens-

Ford, each of the fifteen claimants were faced with the decision of either accepting the offer of permanent employment, or cease working for both the company and CTI. . . . Blackburn further testified that once an assignment with one of CTI's corporate clients had ended, either for lack of work or some other reason, they were 'no longer a CTI employee' and that there was no continuing relationship between CTI and the Claimant, other than consideration for future assignments.

*Id.* at 992-93.

[11] The nature of the employment relationship between C.H. and P & P does not mirror the employment relationship in *Cintemp*. There, employees were placed "with certain corporate clients on a temporary basis." *Id.* at 990. Given the expectation of temporary employment only during the sixty to ninety-day window before permanent employment could be offered, this particular employment relationship between CTI and an employee would inevitably terminate.

[12] These are not the circumstances under which C.H. accepted employment with P & P. C.H. did not come to the pre-determined end of a temporary probationary placement with a potential future employer. She was a permanent employee of P & P, although she had no assurance that she would always be assigned to provide services to Consumer. The employment arrangement contemplated successive assignments at different locations and of varying durations while the caregiver remained the employee of P & P. The employee handbook advised that "additional" training was required, tailored to each consumer's needs (for example, "seizure management"). (Ex. Pg. 13.)

The Review Board reached its decision based upon the premise that the employment relationship at issue was one of a temporary employer and temporary employee. Finding the relationship severed as a matter of law, the Review Board did not consider whether a permanent employment relationship was voluntarily severed by the employee. Accordingly, we remand for a factual determination of whether, in light of the communications between the parties and the surrounding circumstances, C.H. voluntarily left her employment without good cause.

Reversed and remanded.

Bradford, J., Altice, J., concur.